IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CONNIE DESMORE, | § | |
| KWAME ABABIO, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-14-191 |
| | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY, JEH JOHNSON, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Pending before the court[1] is Defendants' combined Partial Motion to Dismiss and Motion for Summary Judgment (Doc. 31). Plaintiffs have not filed a response and the motion is therefore unopposed.[2] The court has considered the motion and the applicable law. For the reasons set forth below, the court **GRANTS** Defendants' motion.

## I.  Case Background

Plaintiffs bring this case against the Department of Homeland Security and three individuals in their official capacities, alleging that Defendants improperly denied the approval of an immigrant visa petition and that the denial violated Plaintiffs'

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Doc. No. 22.

[2]     See S.D. Tex. R. 7.3, 7.4.

constitutional due process and equal protection rights.

**A.   Factual History**

Plaintiff Kwame Ababio ("Ababio") was born in Ghana and became a citizen of Germany in 1997.[3]  On June 25, 1999, Ababio was admitted to the United States as a nonimmigrant pursuant to the Visa Waiver Program, allowing him to remain in the country until September 23, 1999.[4]  On July 26, 1999, Ababio married Jeanne Robinson ("Robinson"), an individual who at that time had been married four times and had submitted petitions for an alien relative ("I-130") on behalf of three husbands, with no record of divorce or termination of the earlier marriages.[5]

On October 12, 2000, Robinson filed an I-130 form on Ababio's behalf.[6]  Robinson claimed that she had had one previous marriage that ended in April 1996 and that she had never filed an I-130 form on behalf of Ababio or anyone else.[7]

Following an interview in which Ababio incorrectly listed the ages of Robinson's children and was not aware when Robinson's previous marriage had ended, on September 15, 2004, the United States Citizenship and Immigration Services ("USCIS") denied

---

[3]    See Doc. 23, Tr. of Admin. Record ("Tr.") 555.

[4]    See Tr. 432.

[5]    See Tr. 485.

[6]    See Tr. 536-39.

[7]    See Tr. 537.

2

Robinson's I-130 petition due to her unreported previous marriages.[8]  Robinson did not appeal the unfavorable decision to the Board of Immigration Appeals ("BIA"), and on October 28, 2004, Ababio filed a petition for divorce from Robinson, which became final on February 23, 2005.[9]

On October 27, 2005, Ababio married Plaintiff Connie Desmore ("Desmore") in Houston, Texas.[10]  On March 9, 2006, Desmore filed an I-130 form on Ababio's behalf, but it was administratively closed on November 8, 2006.[11]  Desmore submitted a second I-130 form on September 27, 2007.[12]  On December 1, 2008, Desmore was issued a Notice of Intent to Deny ("NOID") regarding her I-130 form on the grounds that Robinson's previous I-130 on Ababio's behalf was found to be based on "an obvious fraud," and was not appealed, thus precluding Ababio from obtaining a visa  pursuant to 8 U.S.C. § 1154(c)("Section 1154").[13]  The USCIS explained that in order to gain approval of her current petition, Desmore would have to show that the previously filed petition was not fraudulent.[14]

Desmore contested the USCIS's decision and submitted evidence

---

[8]   See Tr. 485-500.

[9]   See Tr. 437-44, 479-83.

[10]   See Tr. 424-25.

[11]   See Tr. 84.

[12]   See Tr. 415-16.

[13]   See Tr. 392-93.

[14]   See Tr. 393.

in support, including tax returns from 2001, the only year in which Ababio and Robinson filed jointly.[15]  However on May 29, 2009, the USCIS denied Desmore's I-130 form.[16]  The USCIS did not contest that Desmore and Ababio's marriage was valid, however, it found that Ababio's marriage to Robinson was a sham, and thus the form was denied under Section 1154(c).[17]

On June 19, 2009, Desmore appealed the denial to the BIA.[18] On February 29, 2012, the BIA dismissed Desmore's appeal, finding that Ababio's marriage to Robinson was not bona fide.[19]  On March 28, 2012, Desmore appealed the BIA's ruling to the Court of Appeals for the Fifth Circuit.[20]

While that appeal was pending, Desmore wrote a letter to the USCIS stating that the USCIS was "correct all along," that "all this has been a lie," that she was "so done with" Ababio, and that she had prepared divorce papers.[21]  On May 23, 2012, Desmore filed a motion opposing dismissal of the appeal and attached an affidavit explaining that she had written the letter after an argument with Ababio but that she intended to continue pursuing her husband's

[15]   <u>See</u> Tr. 326.

[16]   <u>See</u> Tr. 326-28.

[17]   <u>See</u> Tr. 326-27.

[18]   <u>See</u> Tr. 309-13.

[19]   <u>See</u> Tr. 294-98.

[20]   <u>See</u> Tr. 286-88.

[21]   <u>See</u> Tr. 259.

visa petition.[22]  On June 1, 2012, Desmore's appeal was dismissed by the Fifth Circuit for lack of jurisdiction.[23]

On June 18, 2012, Desmore filed another I-130 form on Ababio's behalf.[24]  On September 11, 2012, the USCIS issued a second NOID based on Ababio's ineligibility under Section 1154(c).[25]

On August 30, 2012, Desmore, Ababio, and Robinson appeared for an adjustment interview.[26]  An immigration officer declined to speak with Robinson on the basis that the BIA had already determined that her marriage to Ababio was a sham.[27]

On October 4, 2012, Desmore appealed the NOID, attaching in support an affidavit by Robinson that stated that her relationship with Ababio had not been a sham.[28]  The affidavit also disclosed that Robinson had filed for divorce due to jealousy and that Ababio was "so upset about [the BIA]'s finding that he decided to return to Germany."[29]

On February 6, 2013, USCIS denied Desmore's I-130.[30]  The

---

[22]    See Tr. 242-43.

[23]    See Tr. 231.

[24]    See Tr. 149-50.

[25]    See Tr. 84-85.

[26]    See Doc. 1, Pls.' Compl. p. 5.

[27]    See id.

[28]    See Tr. 87-94.

[29]    See Tr. 93.

[30]    See Tr. 78-82.

denial indicated that although Desmore's marriage to Ababio was valid, his previous marriage was entered into for the purpose of evading immigration laws.[31] Desmore appealed this denial to the BIA on February 23, 2013, arguing that there was no evidence that Ababio colluded with Robinson, arguing that Ababio was a "victim" of Robinson's "marriage scheme."[32]

On October 21, 2013, Desmore submitted a brief in support of her appeal to the BIA.[33] In her appeal, Desmore argued that the USCIS erred by not interviewing Robinson, that Robinson's marriage to Ababio had not been valid due to Robinson's polygamy, that there was no evidence Ababio knowingly participated in Robinson's marriage fraud, and that Ababio received no benefits from Robinson's actions, therefore they could not be imputed to him.[34]

On April 4, 2014, the BIA dismissed Desmore's appeal.[35] The BIA explained that there was substantial evidence that Ababio entered into the marriage with Robinson for the purpose of evading immigration laws.[36]

## B.  <u>Procedural History</u>

---

[31]  <u>See</u> Tr. 79.

[32]  <u>See</u> Tr. 70.

[33]  <u>See</u> Tr. 7-48.

[34]  <u>See</u> Tr. 9-19.

[35]  <u>See</u> Tr. 4-6.

[36]  <u>See</u> Tr. 5.

6

On June 6, 2014, Plaintiffs Desmore and Ababio filed suit against Defendants, alleging that they were deprived of substantive and procedural due process under the Fifth Amendment, that Section 1154(c) violated the Equal Protection Clause and was arbitrarily and selectively enforced, and requested that the court declare that Defendants incorrectly denied Desmore's I-130 form and award Plaintiffs their attorneys' fees.[37]

On August 29, 2015, Defendants filed a motion to dismiss and for summary judgment.[38]   Plaintiffs did not file a response to Defendants' motion, and the deadline to respond has passed.

## II.  Defendants' Motion to Dismiss Ababio

Defendants move to dismiss Plaintiff Ababio's claims for lack of standing pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1).

The court must decide a Rule 12(b)(1) motion before addressing any attack on the merits. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); 12(h)(3).  Federal courts may exercise jurisdiction over cases only as authorized by the United States Constitution and the jurisdictional statutes. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

---

[37]    See Doc. 1, Pls.' Compl. 8-13.

[38]    See Doc. 31, Defs.' Mot. to Dismiss & for Summ. J.

7

(1994); <u>see also</u> <u>Howery v. Allstate Ins. Co.</u>, 243 F.3d 912, 916 (5th Cir. 2001).  The party asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction.  <u>Kokkonen</u>, 511 U.S. at 377; <u>Howery</u>, 243 F.3d at 916, 919.  In considering such a motion, the court must take as true all uncontroverted factual allegations in the complaint.  <u>John Corp. v. City of Houston</u>, 214 F.3d 573, 576 (5th Cir. 2000).

Defendants argue that Ababio lacks standing to contest the BIA's denial of Desmore's I-130 form and that Desmore alone has standing to challenge the BIA's ruling.  INA regulations state that unfavorable BIA decisions may be appealed by the affected party. <u>See</u> 8 C.F.R. § 103.3(a)(1)(ii).  The regulations implementing the INA define an "affected party" as "the person or entity with legal standing in a proceeding.  It does not include the beneficiary of a Visa petition."  8 C.F.R. § 103.3(a)(1)(iii)(B).  Defendants argue that only Desmore, the visa petitioner, has standing before the court.

In addition to Article III's normal standing requirements, the Supreme Court has held that a person suing under the Administrative Procedure Act ("APA") must also be "arguably within the zone of interests to be protected or regulated by the statute" allegedly violated.  <u>Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak</u>, ___ U.S. ___, 132 S. Ct. 2199, 2210 (2012).  The prudential standing test is not meant to be demanding, and

8

"forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannon reasonably be assumed that Congress intended to permit the suit." Id.

The Fifth Circuit has not specifically determined whether a visa beneficiary has standing to file suit to challenge a rejected I-130 form. See Khalid v. DHS, USA, 1 F. Supp. 3d 560, 568 (S.D. Tex. 2014). Other district courts have consistently found that a Form I-130 beneficiary lacks standing. See, e.g. Opoku-Agyeman v. Perez, 886 F. Supp. 2d 1143, 1148 (W.D. Missouri 2012); Li v. Renaud, 709 F. Supp. 2d 230, 236 n. 3 (S.D.N.Y. 2010). This court has previously found that beneficiaries lack standing to challenge the denial of similar petitions. See Khalid (denying standing to an I-360 beneficiary); Gene's Mach., Inc. v. Dep't of Homeland Sec., No. V-11-4, 2012 WL 1067557, at *6 (Mar. 28, 2012) (denying standing to I-140 beneficiary). In Gene's Machine, Inc., the court found that the beneficiaries' status as illegal residents in the United States was a factor in determining that the beneficiaries lacked standing. Id.

Here, Desmore filed the I-130 forms with Ababio as the intended beneficiary. Like the plaintiffs in Gene's Machine, Inc., Ababio is an illegal resident attempting to challenge a decision for which he was the primary beneficiary. Plaintiffs' causes of action relate to the denial of I-130 forms prepared by Desmore, so

only Desmore, the petitioner, has standing to challenge the sufficiency of the BIA's denial. Ababio's claims are therefore **DISMISSED**.

### III.  Rule 12(b)(6) Dismissal Standard

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 803 n.44 (5th Cir. 2011).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. 678.

## IV.  Analysis

Desmore claims that the denial of her I–130 form (1) violated her substantive and procedural due process rights; (2) that Section 1154(c) violates the equal protection clause of the Fourteenth Amendment; and (3) that Section 1154(c) is arbitrarily and selectively enforced.  Desmore additionally argues that the denial of her application was arbitrary and capricious and therefore subject to review under the APA.  Defendants argue that Desmore's constitutional claims fail to state a claim for relief, and that Desmore cannot prevail as a matter of law on her APA claim. Desmore has not responded, and Defendants' motion is therefore deemed unopposed.  The court considers Desmore's claims in turn.

**A.  <u>Due Process</u>**

Desmore claims that the BIA's rejection violated her substantive due process rights by denying her visa petition.[39]  She claims her procedural due process rights were violated because she was denied the right to present reasons why her petition should be granted, specifically the ability to call Robinson as a witness. Defendants respond that Desmore has failed to state any claim upon which relief can be granted.

The Fifth Amendment states, in relevant part, that: "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  The due process clause

---

[39]     <u>See</u> Doc. 1, Pl.'s Compl. p. 8.

11

encompasses both procedural and substantive rights. <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 840 (1998).

The constitutional guarantee of procedural due process includes, at a minimum, notice and an opportunity to be heard in a meaningful time and manner. <u>Gibson v. Tex. Dept. of Ins.-Div. of Workers' Compensation</u>, 700 F.3d 227, 239 (5th Cir. 2012) (quoting <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80 (1972). The analysis of a procedural due process claim has two steps: (1) whether a liberty or property interest exists with which the government has interfered; and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient. <u>Meza v. Livingston</u>, 607 F.3d 392, 399 (5th Cir. 2010) (quoting <u>Ky. Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 460 (1989), overruled in part on other grounds, <u>Sandin v. Conner</u>, 515 U.S. 472 (1995)), clarified on denial of reh'g, 2010 WL 6511727 (5th Cir. 2010)).

The constitutional guarantee of due process also includes a substantive component that protects individuals from arbitrary or conscience-shocking executive action. <u>See</u> <u>Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys</u>, 675 F.3d 849, 867 (5th Cir. 2012) (quoting <u>Cnty. of Sacramento</u>, 523 U.S. at 847). However, the protection is limited. If another provision of the U.S. Constitution provides "an explicit textual source of constitutional protection," the plaintiff's claims must be analyzed under that provision rather than the "more generalized notion of substantive

12

due process." Wilson v. Birnberg, 667 F.3d 591, 599 (5th Cir. 2012) (quoting Conn v. Gabbert, 526 U.S. 286, 293 (1999)).

Regarding her substantive due process claim, Desmore has not identified what fundamental right is burdened by Defendants' action in denying a visa petition.  Although there is a fundamental right to marry, Defendants have not disputed her marriage to Ababio.  See Kerry v. Din, ___ U.S. ___, 135 S. Ct. 2128, 2134 (2015).  Even if Desmore claimed a liberty or property interest in her I-130 form, the power to expel or exclude aliens is a fundamental sovereign right.  See Fiallo v. Bell, 430 U.S. 787, 792 (1977).  In Kerry, the Supreme Court stated that a person is not deprived of any life, liberty, or property interest when the government denies a spouse's admission to the United States.  Id. at 2138.  Desmore has therefore failed to state a claim that her substantive due process rights were violated.

Similarly, the Supreme Court in Kerry held that, to the extent that a spouse is due any procedural due process under the Constitution, such process is satisfied by an explanation of the BIA's decision.  Id.  Here, there is no question that Desmore received an opportunity to be heard and was informed of the BIA's reasons in denying her petitions.  Because she cannot present a claim that her due process rights were violated, Desmore's due process claims are **DISMISSED**.

## B.  Equal Protection

Desmore argues that Section 1154(c) violates the equal protection clause of the Fourteenth Amendment by treating citizens who marry foreigners differently than citizens who marry other citizens. Defendants note that the Fourteenth Amendment does not apply to the federal government, but that even if Desmore had specified her equal protection claim under the Fifth Amendment, she failed to state a claim for relief because the BIA did not infringe on Desmore's right to marry Ababio, and that, even if Defendants burdened Desmore's ability to live with her alien spouse in the United States, it is related to the government's legitimate interest in regulating immigration and discouraging marriage fraud.

In order to state a claim under the equal protection clause, a plaintiff first must allege "that two or more classifications of similarly situated persons were treated differently" by a state actor. Gallegos-Hernandez v. United States, 688 F.3d 190, 195 (5th Cir. 2012). If successful, the court determines the appropriate level of scrutiny for the classification made. Id.

Because Congress has near-complete legislative power over the admission of aliens into the country, the court has a narrow ability to review legislative decisions. Malagon de Fuentes v. Gonzales, 462 F.3d 498, 504 (5th Cir. 2006). Congress may enact legislation "that would be invalid under the Fourteenth Amendment if enacted by a State, particularly if the legislation relates to immigration." Id. (quoting Rodriquez-Silva v. INS, 242 F.3d 243,

14

246 (5th Cir. 2001)). Congress' legislative decisions to distinguish between those who have committed violations and those who have not, or to make gaining a visa more difficult than removal have not been found to violate equal protection. Id. (citing Giusto v. INS, 9 F.3d 8, 10 (2[d] Cir. 1993) (holding that 28 U.S.C. § 1182(c)'s making discretionary relief unavailable did not violate equal protection rights)). The Fifth Circuit has found that the equal protection clause does not restrict Congress' authority to set admission and naturalization criteria, so the court need not find even a rational basis for Congress' decisions. Rodriquez-Silva, 242 F.3d at 248.

Here, Desmore has not established that she was treated differently from any similarly situated group. As noted by Defendants, the government has not invalidated her marriage to Ababio. Considering Desmore's claims in the best possible light, she argues that Defendants violated her equal protection rights by treating a potential visa beneficiary who had engaged in marriage fraud differently from a potential visa beneficiary who had not. Considering Congress' broad discretionary power in controlling immigration, the court finds that Section 1154(c) does not violate Desmore's rights. Her equal protection claim is therefore **DISMISSED**.

## C. **APA Review**

Desmore additionally asks that the denial of her application

be reviewed under the APA.   Defendants respond that as a matter of law Desmore cannot prevail on her APA claim because there is no evidence that Defendants' actions were arbitrary or capricious.

**1.  Summary Judgment Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Triple Tee Golf, Inc., v. Nike, Inc.</u>, 485 F.3d 253, 261 (5th Cir. 2007).  The summary judgment mechanism is particularly appropriate for the review of a decision of a federal administrative agency. <u>Girling Health Care, Inc. v. Shalala</u>, 85 F.3d 211, 214-15 (5th Cir. 1996).

> The explanation for this lies in the relationship between the summary judgment standard of *no genuine issue as to any material fact* and the nature of judicial review of administrative decisions . . . . [T]he administrative agency is the fact finder.  Judicial review has the function of determining whether the administrative action is consistent with the law – that and no more.

<u>Id.</u> at 215 (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2733 (1983))(alterations in original).

**2.  APA Review**

The court retains jurisdiction under 28 U.S.C. § 1331 to review administrative decisions via the APA.   See <u>Ayanbadejo v. Chertoff</u>, 517 F.3d 273, 278 (5th Cir. 2008).   The court is

authorized to review final agency decisions and to set aside any decision that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law."[40]  5 U.S.C. § 706(2)(A); see also F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009).  Examples of when an agency decision is arbitrary or capricious include when the agency relied on factors not intended by Congress, when it entirely failed to consider an important factor, or when it offered an explanation that was contrary to the evidence or completely implausible.  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

The court's task is to apply the APA standard of review to the agency decision based solely on the administrative record.  Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985).  The standard of review is narrow, requiring only that an agency "examine the relevant data and articulate a satisfactory explanation for its action."  F.C.C., 556 U.S. at 513 (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 43).

Desmore asserts that Defendants' denial of her I-130 form was arbitrary and capricious.  Defendants respond that Desmore's petition was correctly denied under Section 1154(c).

---

[40]     The statute also directs the court to set aside agency actions if found to be contrary to a constitutional right, in excess of statutory jurisdiction, without proper procedural requirements, unsupported by substantial evidence in cases of hearings, or unwarranted by the facts to the extent the facts are subject to trial de novo by the court.  5 U.S.C. § 706(2).  Here, Plaintiffs claim that the decision was arbitrary and capricious.

The court retains limited ability to review Defendant's determination to the extent that its action was final.  An agency's actions are final when: "1) it represents the consummation of the agency's decision making process, meaning that it must not be of a merely tentative or interlocutory nature; and (2) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  <u>Offiong v. Holder</u>, 864 F. Supp. 2d 611, 626 (S.D. Tex. 2012) (quoting <u>Bennett v. Spear</u>, 520 U.S. 154, 178 (1997)).  This means that the court may review only Defendant's final decision to deny Desmore's I-130 form, not specific BIA actions previous to that determination, including the decision not to interview Robinson.

Desmore's I-130 form was denied based on Section 1154(c). Section 1154(c) states:

> [No] petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).  8 C.F.R. § 204.2(a) states that the BIA will deny any petition if there is "substantial and probative evidence" that the individual previously attempted to enter into a marriage or conspiracy in an attempt to evade immigration laws, "regardless

of whether that alien received a benefit through the attempt or conspiracy."

Desmore argues that Ababio's marriage to Robinson does not violate Section 1154(c) because Robinson was married to other individuals at the time and because there was insufficient evidence to support Defendants' finding of marriage fraud between Ababio and Robinson.

Desmore's argument that Ababio's marriage was void is unavailing.   The statute explicitly states that no petition shall be approved when an alien has "attempted or conspired to enter into a marriage for the purpose of evading" immigration laws; the underlying validity of the marriage is extraneous to the BIA's analysis.  See 8 U.S.C. § 1154(c)(2). Here, it is undisputed that Ababio and Robinson attempted to marry; the underlying validity of the marriage is therefore irrelevant.

Desmore also asserts that "there was no substantial and probative evidence which would result in the conclusion that the Robinson-Ababio marriage was fraudulent."[41]   In its review of the BIA's determination, the court is to give considerable deference to the BIA's interpretation unless the record reveals evidence that the BIA's interpretation is incorrect.  Shaikh v. Holder, 588 F.3d 861, 863 (5th Cir. 2009). If the BIA's interpretation is correct, the BIA's determination is upheld if it is supported by substantial

---

[41]    See Doc. 1, Pls.' Compl. p. 11.

evidence.  <u>Id.</u>  "Substantial evidence" requires only that the BIA's decision "be supported by record evidence and be substantially reasonable."  <u>Id.</u> (quoting <u>Omaqah v. Ashcroft</u>, 288 F.3d 254, 258 (5th Cir. 2002).

In this case, the BIA's February 29, 2012 denial stated that it found substantial and probative evidence in support of its determination that Section 1154(c) applied to Desmore's application.[42]  The court therefore must determine only that the BIA's decision was substantially reasonable and supported by record evidence.

A marriage is considered a sham marriage "if the bride and groom did not intend to establish a life together at the time they were married."  <u>Brown v. Napolitano</u>, 391 F. App'x 346, 351 (5th Cir. 2010) (quoting <u>Bark v. I.N.S.</u>, 511 F.2d 1200, 1201 (9th Cir. 1975)). The conduct of the parties after marriage, as well as testimony and evidence regarding courtship, residence, and shared experiences is used to determine the parties' intent at the time of marriage.  <u>Id.</u> (citing <u>Matter of Laureano</u>, 19 I & N Dec. 1, 2 (BIA 1983)).

Here, Ababio married Robinson one month after entering the country.  Robinson completed an I-130 form on Ababio's behalf, stating that she had been married once previously and had never completed an I-130 form, although the USCIS determined that she had married and filled out identical forms on behalf of three other

---

[42]   <u>See</u> Tr. 297.

men.  Robinson and Ababio's interview with USCIS established
numerous inconsistencies, from the ages of Robinson's children, to
the length of her previous marriage, and to whether Robinson had
any tattoos.[43]  Robinson's 2012 affidavit, prepared in support of
Desmore's appeal, additionally included factual inconsistencies,
providing an incorrect name for Ababio's son, stating that
Robinson, not Ababio, filed for divorce, and that Ababio had
returned to Germany after Robinson's application was denied.[44]

Considering the above evidence, the BIA's determination that
the Ababio-Robinson marriage was a sham is both substantially
reasonable and supported by evidence of record.  Defendants' motion
for summary judgment on Desmore's APA claim is therefore **GRANTED**.

## V.  Conclusion

Based on the foregoing, the court **GRANTS** Defendants' motion to
dismiss and for summary judgment.

**SIGNED** in Houston, Texas, this 12th day of February, 2016.

_____
U.S. MAGISTRATE JUDGE

---

[43]      See Tr. 491-500.

[44]      See Tr. 93.

21